**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF IOWA**
**CENTRAL DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA and STATE OF IOWA, ex rel. SUSAN THAYER, individually, | ) ) ) | |
| Plaintiffs, | ) | No.: 4:11-cv-00129 |
| v. | ) | |
| | ) | Judge Jarvey |
| PLANNED PARENTHOOD OF THE HEARTLAND, INC., | ) ) | |
| Defendant. | ) | |

**DEFENDANT PLANNED PARENTHOOD OF THE HEARTLAND'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS THE THIRD AMENDED COMPLAINT**

Alan S. Gilbert, *pro hac vice*
Tiffany L. Amlot, *pro hac vice*
Kristen C. Rodriguez, *pro hac vice*
DENTONS US LLP

Stanley J. Thompson
Jonathan C. Wilson
DAVIS BROWN KOEHN SHORS & ROBERTS PC

*Attorneys for Defendant*
*Planned Parenthood of the Heartland, Inc.*

## TABLE OF CONTENTS

**TABLE OF CONTENTS** ........................................................................................ i

**TABLE OF AUTHORITIES** ................................................................................ ii

**ARGUMENT** ........................................................................................................ 1

I.    Exhibits Submitted By the Parties are Properly Before the Court. ..................................... 2

II.    Count I Fails to Establish an FCA Claim ............................................................................. 3

        A.    No Reasonable Interpretation of the Relevant Rules Required PPH—Or Any Other Provider—to Confirm Actual "Use" of a Prescription Before a Refill. ....... 3

        B.    Prescribing Contraception Without Seeing a Physician or Receiving a Comprehensive Medical Exam Does Not Violate Iowa Law. ............................... 5

        C.    PPH'S Alleged Provision of Services that Allegedly Did Not Meet the Standard of Care Cannot Constitute an FCA Violation Because It Is Not a Material Precondition of Payment. ........................................................................................ 8

        D.    No FCA Claim Can Stand Based on Returned Prescriptions. ............................. 10

III.    Count II Fails Because Medicaid Regulations Allowed PPH to Bill for the Services Alleged in the Complaint. ................................................................................................ 11

IV.    Count III Must Be Dismissed Because PPH's Donation Policy Did Not Violate Any Applicable Regulations. ....................................................................................................... 13

V.    Thayer Fails to Provide Good Cause for Oral Argument. ................................................. 14

**CONCLUSION** ...................................................................................................... 14

# TABLE OF AUTHORITIES

**Cases**

*Chesbrough v. VPA, P.C.*, 655 F.3d 468 (6th Cir. 2011) ................................................................. 9

*Estate of Preston v. Kaiser Permanente*, No. 78972, 2001 WL 1382756 (Ohio Ct. App. Nov. 8, 2001) ................................................................................................................................. 7

*In re Enron Corp. Sec., Derivative & ERISA Litig.*, 761 F. Supp. 2d 504 (S.D. Tex. 2011) ....... 12

*Lindon v. Middletown Reg'l Hosp.*, No. CA94-07-148, 1995 WL 669931 (Ohio Ct. App. Nov. 13, 1995) ............................................................................................................................... 7

*Lucht v. Encompass Corp.*, 491 F. Supp. 2d 856 (S.D. Iowa 2007) ............................................. 2

*Plymouth Cnty., Iowa ex rel. Raymond v. MERSCORP, Inc.*, 886 F. Supp. 2d 1114 (N.D. Iowa 2012) ............................................................................................................................... 4

*Stahl v. U.S. Dep't of Agriculture*, 327 F.3d 697 (8th Cir. 2003) ................................................ 2

*United States ex rel. Colucci v. Beth Israel Med. Ctr.*, 785 F. Supp. 2d 303 (S.D.N.Y. 2011) ...... 9

*United States ex rel. Hixson v. Health Mgmt. Sys., Inc.*, 613 F.3d 1186 (8th Cir. 2010) ......... 5, 12

*United States ex rel. Ketroser v. Mayo Foundation*, 729 F.3d 825 (8th Cir. 2013) .................. 1, 3

*United States ex rel. Kneepkins v. Gambro Healthcare, Inc.,* 115 F. Supp. 2d 35 (D. Mass. 2000) ................................................................................................................................. 10

*United States ex rel. Mikes v. Straus*, 274 F.3d 687 (2d Cir. 2010) ............................................ 10

*United States ex rel. Rostholder v. Omnicare, Inc.*, 745 F.3d 694 (4th Cir. 2014) ...................... 8

*United States ex rel. Thayer v. Planned Parenthood of the Heartland*, 765 F.3d 914 (8th Cir. 2014) ................................................................................................................................. 1

*United States ex rel. Vigil v. Nelnet, Inc.*, 639 F.3d 791 (8th Cir. 2011) ..................................... 14

**Statutes**

31 U.S.C. § 3729 (2006) .............................................................................................................. 14

Iowa Code § 147.107 .............................................................................................................. 5, 6, 7

Iowa Code § 155A.2 .................................................................................................................. 5, 6

Iowa Code § 155A.27 ............................................................................................................... 5, 6

**Regulations**

Iowa Admin. Code § 441-78.2 ........................................................................... 7

Iowa Admin. Code § 657-23.15 ........................................................................ 10

Iowa Admin. Code § 657-6 ............................................................................... 10

Iowa Admin. Code § 657-8.1 ............................................................................. 6

Iowa Admin. Code § 657-8.20 ........................................................................... 6

**Other Authorities**

Iowa Dep't of Human Services, Medicaid Provider Manual ...................................... 12

Iowa Medicaid Enterprise, All Providers Manual .................................................. 9

Iowa Medicaid Enterprise, Prescribed Drug Manual .............................................. 10

Local Rule 7(c) ............................................................................................. 14

Pub. L. No. 111-21, 123 Stat 1617 (May 20, 2009). ................................................ 14

Nothing in Plaintiff-Relator Susan Thayer's Resistance saves her Third Amended Complaint ("TAC") from dismissal with prejudice. Thayer resorts to citation of inapplicable regulations and cases in an attempt to create a facade of a False Claims Act ("FCA") claim here. There is none. Worse yet, she misrepresents the Eighth Circuit's decision in this case as determining that Planned Parenthood of the Heartland ("PPH") "violated numerous Iowa Medicaid Rules." (Pl.'s Br. at 9.) The Eighth Circuit made no such ruling, and did not weigh in on any of the issues that are now before this Court. *United States ex rel. Thayer v. Planned Parenthood of the Heartland*, 765 F.3d 914, 920 (8th Cir. 2014) (explicitly reserving the Rule 12(b)(6) arguments for this Court and noting that its holding "should not be read as in any way expressing a view on [PPH's] Rule 12(b)(6) arguments"). Thayer's Resistance confirms that this lawsuit, instead of recouping fraudulent charges made to the government, actually seeks to impose obstacles for any healthcare provider offering family planning services and providing abortion services. The TAC fails to state any actionable claims against PPH, and must be dismissed with prejudice.

## ARGUMENT

To state an FCA claim, Thayer must allege facts establishing that PPH made a false or fraudulent claim against the United States, and that PPH knew the claim was false or fraudulent because it had actual knowledge of the claim, acted in deliberate ignorance of the truth or knowledge of the falsity of the claim, or acted in reckless disregard of the truth or falsity of the claim. (PPH Br. at 4.) To withstand dismissal on PPH's Rule 12(b)(6) Motion to Dismiss, Thayer's FCA claim must be "plausible on its face" based on "facts raising more than a speculative possibility that [PPH's] claims for payments were materially false or fraudulent." *United States ex rel. Ketroser v. Mayo Foundation*, 729 F.3d 825, 829 (8th Cir. 2013) (citation

omitted).  Notably, a reasonable interpretation of a regulatory scheme cannot form the basis for establishing a knowingly false claim.  (PPH Br. at 6.)  Additionally, an FCA claim cannot be based on alleged violations of program participation conditions, as opposed to a material precondition for payment.  (*Id.* at 6-8.)  None of Thayer's alleged FCA claims satisfy these standards.

I.     **Exhibits Submitted By the Parties are Properly Before the Court.**

PPH attached pertinent government regulations and guidelines to its Motion to Dismiss. These exhibits are relevant because Thayer cannot state a claim under the FCA without clear authority barring the alleged "fraudulent" practices at issue.  To the extent the government has codified and recommended the allegedly "fraudulent" acts in regulations and guidelines, in some instances issued after the 2006 to 2008 time period of the TAC, PPH's actions could not have amounted to a knowing fraud on the government.

Thayer argues that the Court cannot consider four exhibits attached to PPH's Motion to Dismiss without converting it to a Motion for Summary Judgment.[1]  To the contrary, when deciding a motion to dismiss, a court may consider matters subject to judicial notice, *see, e.g. Stahl v. U.S. Dep't of Agriculture*, 327 F.3d 697, 700 (8th Cir. 2003), as well as matters that are "necessarily embraced" by the complaint, *Lucht v. Encompass Corp.*, 491 F. Supp. 2d 856, 860 n.2 (S.D. Iowa 2007) (citing *Enervations, Inc. v. Minn. Mining and Mfg. Co.,* 380 F.3d 1066, 1069 (8th Cir. 2004)).  Further, "[t]he court has complete discretion to determine whether or not to accept any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion."  *Stahl*, 327 F.3d at 701 (internal citation omitted).  Here, the exhibits submitted by both parties are proper subjects of judicial notice as either public records or state regulations, or are

---

[1] However, Thayer then proceeds to attach twenty-three exhibits to her Resistance.  PPH does not challenge these exhibits because they are government regulations or government documents, just as the exhibits offered by PPH, and can be properly considered by the Court.

"necessarily embraced" by Thayer's claims.  Accordingly, the exhibits do not convert PPH's

Motion to Dismiss to a motion for summary judgment.  (*See also* PPH Resp. to Mot. to Strike

[Dkt. No. 70] at 4-9.)

## II.     Count I Fails to Establish an FCA Claim.

### A.     No Reasonable Interpretation of the Relevant Rules Required PPH—Or Any Other Provider—to Confirm Actual "Use" of a Prescription Before a Refill.

The allegations of the TAC, on their face, demonstrate PPH's compliance with applicable

law in refilling prescriptions for oral contraceptive pills and, therefore, cannot constitute a false

claim.  In her TAC, Thayer alleges that PPH mailed each patient a three menstrual cycle of

contraceptive pills, a total of eighty-four pills, every sixty-three days for a year.  (TAC ¶¶ 67-68.)

The TAC further states that the Iowa Medicaid regulations in place at the time permitted a

prescription refill "after 75% of the previous supply is used" (or 63 days of an 84 day supply).

(TAC ¶ 67 n.2.)  Though the allegations in the TAC themselves demonstrate PPH's compliance

with Iowa law regarding the time frame when prescriptions may be refilled, Thayer nonetheless

alleges that PPH's practice of refilling prescriptions after sixty-three days constituted a "false

claim" because it eventually resulted in a "surplus" supply of medication at the end of the year.

(TAC ¶ 68.)  Thayer's "surplus" contention may be a basis to lobby the legislature to change the

prescription refill regulations (indeed, after 2008, the regulation was changed to restrict refills

until 85% of the previous supply is used), but it cannot form the basis of an FCA claim, as a

reasonable interpretation of a regulation cannot constitute a knowingly false claim.  (*See* PPH Br.

at 6, 8-9 (citing *inter alia, Ketroser*, 729 F.3d at 832).)  As a result, Thayer has pled herself out

of court.

In her Resistance, Thayer's only argument to the contrary asks this Court to hold that the

regulation required PPH to determine how many pills each patient had actually *used* before

dispensing a refill.  Thayer argues that the regulation restricted prescription refills until 75% of the prior supply was *used* by the patient and PPH refilled the prescriptions "irrespective of how much, if any, the patient had used" of the prior supply.  (Pl.'s Br. at 8.)  According to Thayer's theory, PPH submitted a knowingly false claim for Medicaid reimbursement each time it refilled a prescription without confirming that 75% of the prior supply of oral contraceptive pills had been ingested by the patient.[2]

Thayer's argument is patently absurd, and cannot be adopted by this Court.  *Plymouth Cnty., Iowa ex rel. Raymond v. MERSCORP, Inc.*, 886 F. Supp. 2d 1114, 1123 (N.D. Iowa 2012) (courts "'look for a reasonable interpretation that best achieves the statute's purpose and avoids absurd results'") (quoting *Schadendorf v. Snap–On Tools Corp.*, 757 N.W.2d 330, 338 (Iowa 2008)).  Under Thayer's interpretation of the applicable rule, all Iowa Medicaid providers would have to confirm whether a previous supply of any medication—not just oral contraceptives—had actually been ingested, injected, or otherwise "used" by the Medicaid patient before it could issue a refill.  Such an obligation would require Medicaid providers to check for depleted pill bottles; determine if medication had been thrown away or saved for later; or perhaps run a toxicology scan on each patient to ensure the appropriate amount of medicine had been ingested. It would essentially outlaw all automatic refill programs for Medicaid patients.

The FCA requires a ***knowingly*** false claim.  Thayer cites no authority to support her personal interpretation of the applicable regulation—indeed, her interpretation would impose absurd and unrealistic requirements for all Medicaid providers.  Here, the allegations in the TAC demonstrate that PPH reasonably interpreted and complied with the relevant rule by refilling

---

[2] Notably, nowhere in Thayer's TAC does she allege that in each circumstance, a patient's prior supply had not actually been "used," and thus there are no factual allegations to support this argument or, if some portion of a prescription had not been "used," that PPH was aware of that non-usage.

prescriptions based on the recommended dosing schedule, and Thayer offers no "authoritative contrary interpretation" of PPH's reasonable interpretation of the regulation to support her theory, which therefore must be rejected. *United States ex rel. Hixson v. Health Mgmt. Sys., Inc.*, 613 F.3d 1186, 1190 (8th Cir. 2010) ("[A] reasonable interpretation of a statute cannot support a claim under the FCA if there is no authoritative contrary interpretation of that statute."). Accordingly, no FCA claim can stand based on the allegation that PPH refilled oral contraception prescriptions on day sixty-three of an eighty-four day supply.

**B.     Prescribing Contraception Without Seeing a Physician or Receiving a Comprehensive Medical Exam Does Not Violate Iowa Law.**

Thayer also asserts PPH violated the FCA by dispensing oral contraception pills to patients without a comprehensive medical examination by a physician. (TAC ¶ 62.) She alleges that PPH submitted knowingly false claims for prescription reimbursement because clinic personnel dispensed the contraceptives to patients "days" before these prescriptions were reviewed and approved by an Advanced Registered Nurse Practitioner ("ARNP"). (TAC ¶¶ 53-54, 65.) Thayer asserts those practices violated Iowa Code § 155A.27 and § 147.107(7). (TAC ¶ 31.) Even taking all of the factual allegations as true, they cannot form the basis of a false claim under the FCA because neither of the cited regulations prohibited the practices alleged in the TAC.

Iowa Code § 155A.27. PPH explained in its opening brief that Iowa Code § 155A.27 (requiring that "each prescription drug order issued or dispensed in this state must be based on a valid patient-practitioner relationship") did not apply to PPH pursuant to Iowa Code § 155A.2(3) ("A family planning clinic is not regulated by this chapter when engaged in the dispensing of birth control drugs . . . ."). (PPH Br. at 10.) In her Resistance, Thayer argued that Iowa Code § 155A.2(3), exempting PPH from the requirements of Chapter 155 of the Iowa Code, was not

enacted until 2009, after the relevant 2006-2008 time period encompassed by this lawsuit.  (Pl.'s Br. at 11; Pl.'s Ex. 1-N.)  Therefore, Thayer argues that the allegations in the TAC do allege a violation of Iowa Code § 155A.27 from 2006-2008 because the prescriptions were allegedly not prescribed pursuant to "a valid patient-practitioner relationship."  (Pl.'s Br. at 11-13.)

However, the versions of Iowa Code § 155A.27 that were in place from 2006-2008 did *not* include a requirement of a "valid patient-practitioner" relationship as Thayer's own exhibits demonstrate.  (*See* Pl.'s Ex. 1-L, 1-M.)[3]  From 2006-2008, Iowa Code § 155A.27 simply listed the technical requirements for "[e]ach prescription drug order issued or filled in [Iowa]," such as stating the "date of issue";  the "name, strength, and quantity of the drug, medicine, or device prescribed"; and the "directions for use."  Iowa Code § 155A.27(1)(a), (c), (e) (attached at Pl.'s Ex. 1-L, 1-M).  In fact, when this statute was amended in 2009 to include the requirement of a "valid patient-practitioner relationship," the amendment also added the subsection specifically *exempting* family planning clinics like PPH.  Iowa Code § 155A.2(3); (Pl.'s Ex. 1-N).[4]  There are no allegations in the TAC that PPH violated the version of Iowa Code § 155A.27 in effect from 2006 to 2008.

---

[3] Thayer's Resistance incorrectly states that § 155A.27 was "formerly" Iowa Administrative Code § 657-8.20 during 2006-2008.  (Pl.'s Br. at 11 & n.15.)  In reality, however, Iowa Administrative Code § 657-8.20 is a Pharmacy Board regulation that implemented § 155A.27, and which applied only to "pharmacists and to all pharmacies providing the services addressed in this chapter to patients in Iowa,"  Iowa Admin. Code § 657-8.1(155A) and, therefore, did not apply to family planning clinics like PPH.  Iowa Code § 147.107(7) (permitting family planning clinics to dispense birth control drugs and exempting family planning clinics from more restrictive dispensing regulations).

[4] Further, none of the cases Thayer cites for the proposition that, as a general matter, a valid practitioner-patient relationship is necessary to dispense prescription medications are applicable here.  (Pl.'s Br. at 13 n.20.)  Unlike this case, none of the cases Thayer cites involve a False Claims Act claim and none involve a physician's standing order.  In fact, most of the cases Thayer cites involve distribution of controlled substances (i.e., drugs with a potential for abuse or dependence) and nearly all involved online prescriptions—factors that are not alleged here.

Iowa Code § 147.107(7).  Thayer does not dispute that the version of § 147.107(7) in effect from 2006-2008 provided that "a family planning clinic may dispense birth control drugs and devices upon the order of a physician" and the more restrictive dispensing statutory subsections "do not apply to a family planning clinic."  Iowa Code § 147.107(7) (attached at Pl.'s Ex. 1-P, 1-Q).  As explained in PPH's opening brief, a reasonable interpretation of § 147.107(7) allows a family planning clinic to dispense birth control under a physician's standing order,[5] whereby, as alleged in the TAC, clinic personnel dispense oral contraceptives to patients that visit a PPH clinic when no qualified practitioner is present pursuant to a physician's standing order, and the prescription is later reviewed and approved by the qualified practitioner.  (PPH Br. 11; TAC ¶¶ 53-54.)

In her Resistance, Thayer argues that § 147.107(7) should be interpreted to require that birth control prescriptions be individually prescribed by a physician that examines each patient. (Pl.'s Br. at 11-12.)  Without any citation to authority, Thayer argues that § 147.107(7) prohibits Medicaid reimbursement for any birth control prescriptions written by an ARNP or prescribed pursuant to a physician standing order for the family planning clinic.  (Pl.'s Br. at 11-12.)  The argument holds no weight.  First, Iowa Code § 147.107(8) specifically permits ARNPs to prescribe medication ("a registered nurse who is licensed and registered as an advanced registered nurse practitioner . . . may prescribe substances or devices"); *see also* Iowa Admin. Code § 441-78.2(249A) (listing ARNPs as legally qualified practitioners).  Second, other courts have found that a standing order is indeed an "order of a physician."  *See Lindon*, 1995 WL 669931, at *4 (Planned Parenthood employees did not engage in unauthorized practice of medicine when following the standing orders of a physician); *Estate of Preston  v. Kaiser*

_____

[5] "A Standing Order is a routine order of a physician giving the authority for the performance of certain prescribed acts."  *Lindon v. Middletown Reg'l Hosp.*, No. CA94-07-148, 1995 WL 669931, at *4 n.4 (Ohio Ct. App. Nov. 13, 1995).

*Permanente*, No. 78972, 2001 WL 1382756, at *8 (Ohio Ct. App. Nov. 8, 2001) (nurses did not engage in unauthorized practice of medicine when following the standing instructions of a physician).  As set forth in PPH's opening brief, specific regulations enacted after 2008 have confirmed and codified the practice of providing contraception under a physician's "standing order" without a physician present and without a comprehensive medical exam to facilitate the provision of contraception when a clinician is not available.  (PPH Br. at 11-12.)

In sum, Thayer disagrees with the practice of prescribing to Medicaid patients oral contraceptive pills without seeing a physician for a comprehensive medical exam.  But, again, Thayer's argument is no more than her asserted, *preferred* interpretation of regulations—an interpretation that would impose requirements that are simply not there.  Thayer has not cited any regulation that requires a practitioner to examine a patient concurrently with issuing a contraception prescription.  PPH's reasonable interpretation of the pertinent regulations cannot form the basis for establishing a knowingly false claim.  (*See, e.g.,* PPH Br. at 6.)

**C.  PPH'S Alleged Provision of Services that Allegedly Did Not Meet the Standard of Care Cannot Constitute an FCA Violation Because It Is Not a Material Precondition of Payment.**

In addition to the arguments advanced above, Count I fails because Thayer does not allege PPH violated any regulation that would have influenced the government's decision to pay for a submitted Medicaid claim.  To assert a claim under the FCA, Thayer must identify a violation of a specific regulation that is a material precondition to payment.  (PPH Br. at 6-8 (citing, *inter alia*, *United States ex rel. Rostholder v. Omnicare, Inc.*, 745 F.3d 694, 701 (4th Cir. 2014).)  The TAC does not allege any Medicaid provision that expressly conditions payment for prescription reimbursement on the quality of the medical exam underlying the prescription.  Even if PPH's practice of prescribing contraception without seeing a physician or receiving a comprehensive medical exam did not meet the accepted standard of care (which, as explained

above, is entirely baseless), the quality of a provider's healthcare services is an issue of program participation, not a condition of payment, and cannot form the basis of an FCA claim.  (PPH Br. at 6-8, 13-14 (citing *United States ex rel. Colucci v. Beth Israel Med. Ctr.*, 785 F. Supp. 2d 303, 315 (S.D.N.Y. 2011).)

In her Resistance, Thayer argues that an "express condition of reimbursement" for oral contraceptive pills was that the prescription was medically necessary and reasonable and met the existing standards of professional practice.  (Pl.'s Br. at 17; *see also id.* at 5-6; Iowa Medicaid Enterprise, All Providers Manual (attached at Pl.'s Ex. 1-C).)  Thayer argues that providing contraception without a medical exam and then automatically refilling those prescriptions resulted in claims for reimbursement that were not "reasonable and necessary."  (Pl.'s Br. at 17.)

Thayer's argument demonstrates why the FCA cannot be used to call into question a health care provider's judgment regarding a specific course of treatment, requiring a subjective interpretation of regulations.  (PPH Br. at 6, 14-15.)  The Court would have to examine the medical and personal circumstances surrounding each of PPH's Medicaid patients that received contraception in order to determine whether the patient's contraception prescription was "reasonable or necessary," based on a subjective standard of care.  Indeed, even Thayer acknowledges that determining "which PPH C-Mail patients should have had physical exams" "create[s] a factual issue, including the need for expert testimony . . . ."  (Pl.'s Br. at 16.) Thayer's allegations that PPH submitted "false claims" by failing to comply with general standards of medical care cannot support a suit under the FCA because the requisite standard of care is inherently subjective and subject to varying interpretations, which is why the FCA is not intended as a federal medical malpractice statute.  (*See* PPH Br. at 14 and cases cited therein, *inter alia*, *Chesbrough v. VPA, P.C.*, 655 F.3d 461, 468 (6th Cir. 2011) ("[R]equesting payment

for [medical services] that allegedly did not comply with a particular standard of care does not amount to a 'fraudulent scheme' actionable under the FCA.").)

While Thayer attempts to distinguish *United States ex rel. Mikes v. Straus*, 274 F.3d 687 (2d Cir. 2010), *Straus* squarely demonstrates why Thayer's claims must fail.  The Court specifically explained that "the requirement that a service be reasonable and necessary generally pertains to the selection of the particular procedure and not to its performance" and that the "failure of the procedure to conform to a particular standard of care ordinarily will not [determine whether it is reasonable and necessary]."  *Id.* at 701; (*see also* PPH Br. at 14-15).  Yet, Thayer asks this Court to engage in a factual investigation as to what are the standards of good medical care with regard to contraception prescriptions, and whether those standards were met for each PPH patient.  That is not the purpose of an FCA lawsuit.[6]

**D.     No FCA Claim Can Stand Based on Returned Prescriptions.**

Thayer does not dispute that, as PPH demonstrated in its Opening Brief, reusing returned drugs is expressly permitted by Iowa law.  *See* Iowa Admin. Code §§ 657-6, 657-23.15. Nonetheless, she persists in her FCA claim based on her allegations that PPH re-shipped returned contraception pills to other patients without crediting the Iowa Medicaid Enterprise and/or Iowa Family Planning Network (TAC ¶¶ 73-75) because she contends that Iowa rules require pharmacies to credit Medicaid for unused contraceptive pills.  (*See* Pl.'s Br. at 18; Iowa Medicaid Enterprise, Prescribed Drug Manual (attached at Pl.'s Ex. 1-S) (stating, in part, that

---

[6] Citing one court's reasoning that the "medical necessity" of a procedure or service "may not be met where a party contends that a particular procedure was . . . performed solely for profit" (Pl.'s Br. at 19 (quoting *United States ex rel. Kneepkins v. Gambro Healthcare, Inc.,* 115 F. Supp. 2d 35, 41-42 (D. Mass. 2000)), Thayer attempts to re-characterize her claim as not attacking the "quality" of care but rather the "medical necessity" of the C-Mail program because PPH ran the program "to increase its revenues."  (Pl.'s Br. at 19.)  But whether or not PPH received increased revenues from the C-Mail program is irrelevant because its practices expressly complied with the applicable regulations.

"[a]ny previous charges for intact *unit-dose packages* returned to the pharmacy must be credited to the Medicaid program." (emphasis added)).)

However, the Medicaid provision Thayer cited does not create such a requirement and is not applicable here.  The regulation regarding credits for intact, returned unit-dose packages is only applicable to the additional reimbursement provided for unit dose packaging, which provides for "[a]dditional reimbursement of one cent per dose" which is only available "for dispensing oral solids to ***nursing home patients*** in unit-dose packages prepared by the pharmacist" (Pl.'s Ex. 1-S at ¶ 4 (emphasis added))—making the regulation obviously inapplicable to PPH's provision of oral contraceptive pills.  Thus, the section of the Manual that Thayer quotes is inapplicable to the facts alleged here.  Accordingly, because Thayer has not identified any requirement that PPH credit or adjust a claim for contraceptive pills that are returned to PPH, her FCA claim must fail.  (*See* PPH Br. at 5 and cases cited therein.)

### III.    Count II Fails Because Medicaid Regulations Allowed PPH to Bill for the Services Alleged in the Complaint.

Thayer's Resistance embellishes Count II of her TAC with a number of additional facts that simply are not pled—and have never been pled in any of her prior three complaints.  For example, she claims, without any citation to the TAC, that PPH would claim reimbursements for " 'office visits,' 'medications,' 'lab work,' 'general counseling,' and 'abortion aftercare,' but would not list the proper CPT code to show that these items were related to an abortion procedure."  (Pl.'s Br. at 22.)  Thayer also newly claims, again, without any citation to the TAC, that PPH would not submit Certification Form 470-0836, which is required for Medicaid payment for the actual abortion procedure itself.  (*Id.*)  Further, Thayer now claims, yet again without support from her TAC, that PPH would perform "ultrasounds specifically for the purpose of determining whether or not an abortion had been successful and the pregnancy had

been terminated." (*Id.* at 23.)  None of these new, unpled claims may be considered by the Court when determining whether Count II states an FCA claim.  *See In re Enron Corp. Sec., Derivative & ERISA Litig.*, 761 F. Supp. 2d 504, 566 (S.D. Tex. 2011) ("[I]t is axiomatic that a complaint cannot be amended by briefs in opposition to a motion to dismiss.") (citation omitted).

The allegations that actually do appear in the TAC (Thayer's fourth attempt to plead a cognizable claim) do not state a claim under the FCA because, as PPH explained in its Opening Brief, the applicable regulations *do not* prohibit PPH's alleged actions.  The Medicaid Manual expressly permits reimbursement for "services that would have been performed on a pregnant woman regardless of whether she was seeking an abortion."  Iowa Dep't of Human Services, Medicaid Provider Manual, Chap. E, Section V(G)(2) at p.70 (attached at PPH Ex. D).  Those services explicitly *include* (but are not limited to) the services Thayer alleges were improperly provided, such as pregnancy tests and blood typing tests.  (*Id.*)  That regulation can also be reasonably interpreted to apply to the other services alleged in Thayer's TAC—office visits, lab work, ultrasounds, and general counseling—all of which would be performed on a pregnant woman regardless of her choice to have an abortion.  Thus, Thayer's allegations in Count II fail to state an FCA claim because PPH's practices are consistent with express provisions of applicable regulations, and at the very least, are also consistent with a reasonable interpretation of the regulation.  (*See* PPH Br. at 6, 16-17.)  Further, these allegations fail to meet the requisite scienter element of an FCA claim because there is no "authoritative contrary interpretation" of the regulation to PPH's interpretation, and therefore, there are no facts that could be pled to demonstrate that PPH *knowingly* violated this regulation.  *Hixson*, 613 F.3d at 1190.

**IV.    Count III Must Be Dismissed Because PPH's Donation Policy Did Not Violate Any Applicable Regulations.**

In her TAC, Thayer claims that PPH violated the FCA by soliciting and receiving donations from Medicaid eligible patients.  (TAC ¶¶ 109-10.)  But as PPH has explained, even if true, this practice does not violate the FCA because there is no regulation or rule prohibiting healthcare organizations from soliciting charitable donations from Medicaid or Medicare patients. To the contrary, subsequent regulations specifically permit the practice, thereby demonstrating the propriety of PPH's prior actions.  (PPH Br. at 17-18.)

Trying to find some way to impose liability on PPH for its alleged "coerced" donation practice, Thayer argues in her Resistance that these donations amounted to a fraud on the government because PPH never disclosed to the government that it was collecting this "charge" from Medicaid patients.  (Pl.'s Br. at 24.)  Therefore, Thayer argues that the "Balance Due" that PPH submitted to Iowa Medicaid was "inflated" by the amounts of the donations received from Medicaid patients, and that PPH was obligated to "make no additional charges to the member or others."  (*Id*. at 24-25)  But under any reasonable interpretation of the term, "donations" are simply not "charges," and therefore PPH cannot be held liable under the FCA for seeking out these donations and not deducting them from the "Balance Due."  As PPH explained in its Opening Brief, Thayer's interpretation would operate to require all non-profit health organizations to track and deduct donations from the balance charged to the government for each Medicare or Medicaid patient—an onerous, overly burdensome task that is not a reasonable interpretation of the regulation.  (*See also* PPH Br. at 18.)

Finally, to the extent Thayer is attempting to allege some sort of reverse FCA claim here pursuant to 31 U.S.C. § 3729(a)(7) (2006),[7] that type of claim still gets her nowhere.  "To be actionable under § 3729(a)(7), an 'obligation to pay . . . money' must exist at the time the alleged false record or statement was made or used and must be 'a specific, legal obligation . . . in the nature of those that gave rise to actions of debt at common law for money or things owed.'" *United States ex rel. Vigil v. Nelnet, Inc.*, 639 F.3d 791, 801 (8th Cir. 2011) (quoting *United States v. Q Int'l Courier, Inc.*, 131 F.3d 770, 773 (8th Cir. 1997)).  Here, there were no statutes in place that would have legally obligated PPH to return the amount of donations from Medicaid or Medicare patients to the government, and accordingly, no FCA claim, in any form, can stand.

## V.      Thayer Fails to Provide Good Cause for Oral Argument.

PPH requests that its Motion to Dismiss the TAC be decided on the pleadings and that Thayer's request for oral argument be denied.  Thayer fails to state why oral argument is necessary and does not satisfy Local Rule 7(c) by supporting her request with a showing of good cause beyond her bald assertion that the issues "are very complex."  (Pl.'s Br. at 26.)  To the contrary, the issues here are simple: Thayer has failed to plead that PPH knowingly submitted any false claim in violation of the FCA that cannot be resolved on the parties' extensive briefing.

## CONCLUSION

For the foregoing reasons, and those set forth in its Opening Brief, Defendant Planned Parenthood of the Heartland respectfully requests that this Court dismiss the Third Amended Complaint with prejudice and award any other relief it deems just and proper.

---

[7] Section 3729 was amended in May 2009, after the 2006 to 2008 time period of the TAC.  Pub. L. No. 111-21, 123 Stat 1617 (May 20, 2009).

Dated: May 1, 2015                          Respectfully submitted,


                                            /s/ Tiffany L. Amlot
                                            *One of the attorneys for Defendant*
                                            *Planned Parenthood of the Heartland*


Alan S. Gilbert, *pro hac vice*
Tiffany L. Amlot, *pro hac vice*
Kristen C. Rodriguez, *pro hac vice*
DENTONS US LLP
233 S. Wacker Drive, Suite 7800
Chicago, IL 60606
Telephone: 312-876-6133
Facsimile: 312-876-7934
alan.gilbert@dentons.com
tiffany.amlot@dentons.com
kristen.rodriguez@dentons.com

Stanley J. Thompson
Jonathan C. Wilson
DAVIS BROWN KOEHN SHORS & ROBERTS PC
215 10th Street, Suite 1300
Des Moines, IA 50309
Telephone: 515-288-2500
Facsimile: 515-243-0654
stanthompson@davisbrownlaw.com
jonathanwilson@davisbrownlaw.com

## <u>CERTIFICATE OF SERVICE</u>

I, Tiffany Amlot, hereby certify that on May 1, 2015, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to attorneys of record.

/s/ Tiffany L. Amlot