IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA, CENTRAL DIVISION

| | |
|---|---|
| SUSAN THAYER,<br>Qui Tam Plaintiff/Relator<br><br>ON BEHALF OF HERSELF AND ON BEHALF OF THE UNITED STATES OF AMERICA AND THE STATE OF IOWA,<br>    Plaintiff,<br><br>v.<br><br>PLANNED PARENTHOOD OF THE HEARTLAND, INC. (f/k/a PLANNED PARENTHOOD OF GREATER IOWA, INC.),<br>    Defendant. | Case No. 4:11-cv-00129<br><br><br>DEFENDANT'S RESISTENCE TO PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS |

TABLE OF CONTENTS

I. Legal Standard ................................................................................................................ 2

II. Background Concerning the Remaining Claim in Count I and the Discovery
    Dispute at Issue ............................................................................................................... 4
    A. Litigation History ...................................................................................................... 4
    B. Dismissal of Claims Related to The Providing of Contraception ............................. 5
    C. Dispute Concerning the Proper Scope of Discovery Relevant to the Surviving
       Contraception Claim. ................................................................................................. 7

III. Individual Patient Records Are Not Relevant to the Remaining Claim and Defenses. ........... 8

IV. Plaintiff's Requested Discovery is Not Proportional to the Needs of the Case. .................... 10
    A. Burden and Expense Required to Produce the Requested Patient Medical Records. ....... 12
    B. Burden and Expense Required to Produce Prescription Information in the FamPlan
       Database. .................................................................................................................. 15

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA, CENTRAL DIVISION

| | |
|---|---|
| SUSAN THAYER,<br>Qui Tam Plaintiff/Relator<br><br>ON BEHALF OF HERSELF AND ON BEHALF OF THE UNITED STATES OF AMERICA AND THE STATE OF IOWA,<br>    Plaintiff,<br><br>v.<br><br>PLANNED PARENTHOOD OF THE HEARTLAND, INC. (f/k/a PLANNED PARENTHOOD OF GREATER IOWA, INC.),<br>    Defendant. | Case No. 4:11-cv-00129<br><br>DEFENDANT'S RESISTENCE TO PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS |

"The purpose of the FCA is to combat fraud, not to impose quality of care standards in the medical field." (Jarvey, J., Dkt. 85 at 25 (dismissing portions of Plaintiff's claims as a matter of law).) Before reaching discovery, this case has compiled a lengthy litigation history assessing, and largely dismissing, the majority of Plaintiff's fraud claims as a matter of law. A narrow issue remains concerning whether Defendant Planned Parenthood of the Heartland, Inc. (f/k/a Planned Parenthood of Greater Iowa, Inc.) ("PPH") committed Medicaid fraud by issuing "prescriptions without or prior to authorization by a licensed practitioner." (Dkt. 85 at 30.) PPH has asserted that it was permitted to issue birth control prescriptions prior to physician authorization pursuant to standing orders in place during the relevant time frame that complied with Iowa law. Against the narrow backdrop of this largely legal claim, Plaintiff has brought this Motion to Compel seeking the individual patient medical file for every PPH birth control prescription paid by Medicaid from 2006 to 2008, estimated to be 45,000 to 60,000 prescriptions. This discovery is irrelevant to the remaining claim and would be prohibitively burdensome for PPH to produce. PPH, a non-profit 501(c)(3) organization, estimates that it would cost approximately $670,000 to $820,000 to produce the requested discovery.

Under the recently revised Rule 26(b)(1), "the pretrial process must provide parties with efficient access to what is needed to prove a claim or defense, but eliminate unnecessary or wasteful discovery. The key here is *careful and realistic assessment of actual need*." Chief Justice John Roberts, 2015 Year–End Report on the Federal Judiciary, at p. 7 (emphasis added).[1] Plaintiff's discovery requests in this matter are the archetype of "discovery run amok" that the recently amended Federal Rules were designed to combat. *Noble Roman's, Inc. v. Hattenhauer Distrib. Co.*, No. 14-CV-01734, 2016 WL 1162553, at *7 (S.D. Ind. Mar. 24, 2016) (finding defendant's discovery requests were "too far afield from the contested issues in this case" and failed the proportionality test under the recently revised Rule 26(b)). As demonstrated below, the discovery requested by Plaintiff is neither relevant to the remaining claim at issue nor proportional to the needs of the case. Accordingly, Plaintiff's Motion to Compel should be denied.[2]

**I.      Legal Standard**

Rule 26 of the Federal Rules of Civil Procedure was recently revised effective December 1, 2015. The revised Rule 26 permits the discovery of nonprivileged matter "that is relevant" to a party's claim or defense and "proportional" to the needs of a case, considering the importance of the issues at stake, the importance of the discovery in resolving those issues, the amount in controversy, and the weighing of burdens and benefits. Rule 26(b)(1). The changes to Rule 26

---

[1] Found at www.supremecourt.gov/publicinfo/year-end/2015year-endreport.pdf.
[2] Following the filing of Plaintiff's Motion to Compel, the parties reached an agreed compromise concerning the production of limited documents personnel files. Accordingly, the Court need not decide Plaintiff's "Brief Point II" concerning Requests for Production Nos. 2, 36-38. With regard to Plaintiff's "Brief Point III" concerning a subset of communications regarding standing orders, PPH agrees to search for the additional limited email communications sought in Plaintiff's "Brief Point III." While PPH preserves its objections as to the relevancy of the communications sought, PPH agrees to meet and confer with Plaintiff in good faith regarding the withholding of responsive communications pursuant to those objections, if necessary.

were designed to protect against over-discovery and to emphasize judicial management of the discovery process.

In United States Supreme Court Chief Justice's 2015 Year–End Report on the Federal Judiciary, he discussed the December 1, 2015 amendment to Rule 26(b) and stated that the amended rule requires lawyers to "size and shape their discovery requests to the requisites of a case. Specifically, the pretrial process must provide parties with efficient access to what is needed to prove a claim or defense, but eliminate unnecessary or wasteful discovery." Chief Justice John Roberts, 2015 Year–End Report on the Federal Judiciary, at p. 7. "No longer is it good enough to hope that the information sought might lead to the discovery of admissible evidence. In fact, the old language to that effect is gone. Instead, a party seeking discovery of relevant, non-privileged information must show, before anything else, that the discovery sought is proportional to the needs of the case." *Gilead Scis., Inc. v. Merck & Co, Inc.*, No. 13-CV-04057, 2016 WL 146574, at *1 (N.D. Cal. Jan. 13, 2016) (citing Rule 26(b)(1)); *see also Noble Roman's, Inc.,* 2016 WL 1162553 at *3 ("Rule 26's expression of the scope and limits of discovery has evolved over the last thirty years or so. Each time the language and/or structure of the "Discovery Scope and Limits" section of the rule was changed, it was to rein in popular notions that anything relevant should be produced and to emphasize the judge's role in controlling discovery.").

In a qui tam action under the False Claims Act ("FCA"), a plaintiff-relator is not entitled to receive all documents and information related to every financial exchange between the defendant and the government based on an "information-and-belief" approach in the complaint, because those allegations lead to "broad and burdensome discovery." *See United States ex rel. Jacobs v. CDS, P.A.*, No. 4:14-CV-00301-BLW, 2016 WL 4146077, at *4 (D. Idaho Aug. 3, 2016) ("[A] relator is supposed to be an insider, one who advances claims she knows about because of her unique position that the government does not know. Moreover a qui tam action is

-3-

not a roving commission to investigate all the financial dealings of the defendants." (citation omitted)).

Here, Plaintiff does not provide the Court with any proportionality analysis concerning the requested discovery. Instead, Plaintiff summarily asserts that the discovery requested may (in the Plaintiff's opinion) have some relevance to the remaining issue in the case and, therefore, Plaintiff argues that she is entitled to the discovery. However, under the recently amended Rule 26, "a party is not entitled to receive every piece of relevant information." *In re: Takata Airbag Products Liab. Litig.*, No. 14-CV-24009, 2016 WL 1460143, at *2 (S.D. Fla. Mar. 1, 2016). As the requested discovery is neither relevant to any remaining claim in this litigation nor proportional to the needs of the case, Plaintiff's motion should be denied.

## II. Background Concerning the Remaining Claim in Count I and the Discovery Dispute at Issue

### A. Litigation History

The FCA allows a private party to assert a claim alleging government fraud, but permits the government an opportunity to review the asserted claim and decide whether or not to participate on its own behalf. In 2011, Thayer filed her original complaint and first amended complaint. (Dkt. 10.) Both the State of Iowa and the United States investigated the allegations and decided not to intervene. (Dkt. 17, 18.) After a series of dispositive motions and amended complaints, the Court granted PPH's motion to dismiss the Third Amended Complaint ("TAC") pursuant to Rule 9(b) because Thayer failed to allege a single representative example of a false claim, as required under *U.S. ex rel. Joshi v. St. Luke's Hospital, Inc.*, 441 F.3d 552 (8th Cir. 2006). On appeal, the Eighth Circuit found that Thayer was not required to meet the standard previously articulated in *Joshi* because she alleged an adequate basis of her knowledge of the alleged false claims. *U.S. ex rel. Thayer v. Planned Parenthood of the Heartland*, 765 F.3d 914, 917-18 (8th Cir. 2014). Nonetheless, the Eighth Circuit affirmed dismissal of two of Thayer's

claims under Rule 9(b) and remanded the remaining claims for further consideration under Rule 12(b)(6). *Id.* at 919-20.

PPH then moved to dismiss the three remaining claims in the TAC under Rule 12(b)(6). In his July 21, 2016 decision, Judge Jarvey dismissed, in part, Count I, denied PPH's motion to dismiss Count II and dismissed Count III. (Dkt. 85 at 30.) At issue in this Motion is the surviving claim in Count I concerning Medicaid reimbursement for birth control prescriptions.[3]

### B.     Dismissal of Claims Related to The Providing of Contraception

Count I alleges, in relevant part, that PPH dispensed contraception (1) without a valid patient-practitioner relationship, (2) without or prior to the order of a physician or other authorized practitioner, (3) at levels not medically reasonable or necessary, (4) in amounts constituting 'abuse or overuse', (5) in amounts not consistent with professionally recognized standards of care and practice, (6) without any comprehensive examination by an authorized doctor or practitioner having been performed, (7) never delivered to the intended client, and (8) billed by PPH at much higher than the allowed rate. (*TAC* ¶ 47a; *see also* Dkt. 85 at 11.)

In granting PPH's motion to dismiss, in part, Judge Jarvey held that "[t]o the extent that Plaintiff's Count I is based on failure to provide a certain quality of care, Defendant's reasonable interpretation of the 75% refill requirement, the absence of "valid patient-practitioner relationship," or Defendant's failure to credit Medicaid for recycled prescriptions, Count I is dismissed." (Dkt. 85 at 26.) However, Judge Jarvey did permit one portion of Count I to survive, holding "Plaintiff's Count I states a FCA claim pursuant to Rule 12(b)(6) with respect to the allegations that Defendant issued prescriptions without or prior to authorization by a licensed practitioner." (*Id.* at 30.)

---

[3] The other remaining claim in this litigation concerns Plaintiff's allegation that PPH fraudulently submitted claims for reimbursement to Medicaid in conjunction with the provision of abortion services. The parties have met and conferred regarding discovery related to that claim and, to date, have been successful in resolving any disputes.

With regard to the remaining claim, Plaintiff alleges that clinic personnel dispensed contraception to patients that visited a PPH clinic when no qualified practitioner was present and the prescription was later approved by the qualified practitioner. (TAC ¶¶ 53-54.) Plaintiff argues this practice violates Iowa Code § 147.107(7), which states that "a family planning clinic may dispense birth control drugs and devices upon the order of a physician." Iowa Code § 147.107(7). Plaintiff argues that the statute requires that the oral contraceptive pills ("OCPs") be dispensed only *after* an order by a physician. Plaintiff further argues that the prescribing order may only be issued by a physician, as opposed to any other medical professional who may be authorized to prescribe drugs. At issue in this case is whether or not PPH's prescribing practices complied with the statute.

PPH largely does not dispute Plaintiff's factual allegations concerning the surviving portion of Count I. However, PPH contends that a reasonable interpretation of § 147.107(7) allows a family planning clinic to dispense birth control under a physician standing order. A reasonable interpretation of a regulatory scheme cannot form the basis of a FCA violation for a knowingly false claim.[4] Indeed, following the 2006 to 2008 period at issue in this case, Title X regulations, as enforced through FPCI regulations, were clarified in 2011 to explicitly allow clinic staff to provide contraception pursuant to a physician standing order after eliciting the patient's personal and medical history and checking the patient's weight and blood pressure. (Contraception Standing Order dated Mar. 1, 2011 excerpt from the FPCI Clinical Protocols 2011, attached as Exhibit A, at pp. 12-13.) The FPCI protocol states that "[i]t is imperative to

---

[4] *See, e.g., Ketroser v. Mayo Foundation*, 729 F.3d, 825, 832 (8th Cir. 2013) ("Mayo's reasonable interpretation of any ambiguity inherent in the regulations belies the scienter necessary to establish a claim of fraud under the FCA."); *Hixson v. Health Management Systems, Inc.,* 613 F.3d 1186, 1190 (8th Cir. 2010) ("[A] reasonable interpretation of a statute cannot support a claim under the FCA if there is no authoritative contrary interpretation of that statute."); *U.S. v. Prabhu*, 442 F. Supp. 2d 1008, 1026 (D. Nev. 2006) (finding that "claims are not 'false' under the FCA when reasonable persons can disagree regarding whether the service was properly billed to the Government") (citations omitted).

start a contraception method as soon as possible to avoid risking a possible unplanned pregnancy," even when "the clinician is not available or no appointment is available that day." (*Id.*) The FPCI clarification speaks to and authenticates the reasonableness of PPH's interpretation during the relevant time period.

Judge Jarvey found that although the issuance of contraception pursuant to a standing order "may be a reasonable interpretation of the law, it is unsupported by the factual allegations of the TAC," which were the only factual allegations he could consider on a Motion to Dismiss. (Dkt. 85 at 16.) Since Plaintiff did not allege that PPH had standing orders in place in its clinics during the relevant time period, the Court denied the motion to dismiss that claim. The Court has yet to consider whether the standing orders themselves are a basis for dismissing the claim.

### C. Dispute Concerning the Proper Scope of Discovery Relevant to the Surviving Contraception Claim.

PPH does not dispute that Plaintiff is entitled to discovery concerning whether standing orders were in place at the clinics providing contraception and whether PPH was intending to commit the alleged government fraud by using the standing orders. Accordingly, PPH has produced the standing orders and related provisions of the operational manual; signature sheets for each clinic documenting the employees' review of the order and agreement to abide by the order; and is in the process of searching, reviewing and producing communications relevant to those issues.

However, as detailed below, PPH maintains that Judge Jarvey's order, applying applicable law, does not permit Plaintiff to review the circumstances surrounding every individual birth control prescription to assess whether each Medicaid patient was prescribed birth control within the applicable requisite standard of care, as established by the standing orders. As many cases have held, the False Claims Act is not a federal medical malpractice statute.

Despite the limited scope of Plaintiff's remaining claim, Plaintiff has moved to compel PPH to produce privileged individual patient charts and medical records for every Medicaid patient that received contraception from PPH from 2006 to 2008. Plaintiff moves to compel on the following three requests:

**Request No. 6.** In Request No. 6, Plaintiff seeks all medical records of patients receiving OCPs with charges paid in part or in full by Medicaid.

**Request No. 19.** Request No. 19 seeks the "Medication/Problem Sheet" for each OCP prescription paid in part or in full by Medicaid. These documents are contained in the patient medical records requested in Request No. 6.

**Request No. 41**. Two categories of documents are requested in Request No. 41. First, a "Supply/Problem Sheet" for each OCP prescription paid in part or in full by Medicaid. These documents are contained in the patient medical records requested in Request No. 6. Second, information from a prescription information screen in "FamPlan," the billing database that PPH used during the relevant time frame.

**III.  Individual Patient Records Are Not Relevant to the Remaining Claim and Defenses.**

A party may only obtain discovery "that is relevant to any party's claim or defense." Rule 26(b)(1). *See also, i.e., Miscellaneous Docket Matter No. 1 v. Miscellaneous Docket Matter No. 2*, 197 F.3d 922, 925 (8th Cir. 1999) ("[D]iscovery may not be had on matters irrelevant to the subject matter involved in the pending action."); *Inline Packaging, LLC v. Graphic Packaging Int'l, Inc.*, No. CV 15-3183 ADM/LIB, 2016 WL 6534394, at *4 (D. Minn. Nov. 2, 2016) (limiting discovery to only those issues specifically pled in the complaint); *Peterson v. Nw. Mut. Ins. Co.,* No. 4:13-CV-00018-RAW, 2013 WL 11872711, at *3 (S.D. Iowa Aug. 19, 2013) ("Discovery under the federal rules is limited to matters relevant to the parties' claims and defenses in litigation."); *Leisman v. Archway Med., Inc.*, No. 14–1222, 2015 WL 4994084, at *2 (E.D. Mo. Aug. 19, 2015) ("Plaintiffs are limited to those allegations specifically pled in the

-8-

complaint. The exploration through discovery of topics beyond those allegations is overbroad, unduly burdensome, and constitutes a fishing expedition by Plaintiffs to develop new claims."). Further, discovery into matters that would only be relevant to claims that are no longer in the case should be denied. *See Peterson*, 2013 WL 11872711 at *3; *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 352 (1978).

Information contained in individual patient health files is not relevant as to whether or not PPH "issued prescriptions without or prior to authorization by a licensed practitioner," the only portion of Count I remaining in the case. (Dkt. 85 at 30.) Indeed, PPH *admits* that it issued birth control prescriptions before a licensed practitioner approved the prescription, as permitted by the HOPE Standing Order—that has never been an issue of fact in this case. As set forth above, the remaining portion of Count I largely involves whether or not PPH's HOPE Standing Orders constitute a reasonable interpretation of § 147.107(7), allowing a family planning clinic to dispense birth control drugs and devices "upon the order of a physician." Following the conclusion of discovery on this issue, PPH intends to move for summary judgment on Count I, on the ground that PPH's practice of providing contraception pursuant to the standing orders was a reasonable interpretation of relevant law.

Plaintiff argues she is entitled to the medical records of PPH's Medicaid patients because the records will indicate whether PPH complied with the terms of the standing orders in issuing each individual prescription.[5] For example, the HOPE Standing Order states that patients with

---

[5] Plaintiff also cites PPH's written responses to one of Plaintiff's 44 discovery requests which, in objecting to the relevancy of patient medical records, stated that the remaining issue was "whether standing orders were in place at PPH during the relevant time frame and whether PPH complied with said standing orders." (Pl. Brief at 8.) The response may have been imprecisely drafted, but PPH has consistently maintained its position that Plaintiff is entitled to discovery concerning whether the standing orders were in place and complied with relevant law but is not entitled to discovery concerning the health records underlying individual patient prescriptions. Indeed, in the same written discovery response, PPH objected to the production of any individual

blood pressure "elevated above the guidelines" may be excluded from receiving contraception pursuant to the standing order. Plaintiff argues that she is entitled to review every patient health chart to determine if any patient was prescribed OCPs despite elevated blood pressure.

Even if there were some patients who were prescribed OCPs despite elevated blood pressure, such evidence would not support Plaintiff's FCA claim. Such evidence would not show fraud by PPH, but, at most, a negligent failure to follow proper medical care standards. Judge Jarvey already has dismissed any alleged violation of the FCA based on the alleged failure to provide quality patient care to individuals because "the FCA was not intended to be a mechanism for the Government or a third party to conduct a federal medical malpractice trial regarding qualitative healthcare standards." (Dkt. 85 at 25.)

The terms of the standing order cannot be used as an end-run around the dismissal of Plaintiff's claim challenging PPH's delivery of medical treatment on an individual patient basis. "The FCA is not the appropriate avenue of redress when a plaintiff merely disagrees with the course of medical treatment administered by a defendant." (*Id*.) Plaintiff's claim that PPH did not meet the requisite standard of care in providing birth control prescriptions to individual Medicaid patients has been dismissed, and Plaintiff is not entitled to discovery going to that allegation. Accordingly, the individual health records of Medicaid patients are not relevant to the remaining claim in Count I.

### IV. Plaintiff's Requested Discovery is Not Proportional to the Needs of the Case.

A party may only obtain discovery that is "proportional to the needs of the case." Rule 26(b)(1); *see also Sprint Commc'ns Co. L.P. v. Crow Creek Sioux Tribal Court*, 316 F.R.D. 254, 263 (D.S.D. 2016) (the amended rule "crystalizes the concept of reasonable limits on discovery through increased reliance on the common-sense concept of proportionality").

---

patient health records. PPH's position on that issue has been unwavering throughout continued discovery communications between the parties.

Under Rule 26(b)(1), the proportionality analysis requires consideration of six factors: "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Rule 26(b)(1); *see also In re Tier 1 Jeg Telecommunications Cases*, No. 4:07-CV-00043, 2016 WL 7508831 (S.D. Iowa July 14, 2016) (recognizing proportionality factors under amended Fed.R.Civ.P. 26(b)). The Advisory Committee Notes discuss the application of these factors:

> The parties may begin discovery without a full appreciation of the factors that bear on proportionality. A party requesting discovery, for example, may have little information about the burden or expense of responding. A party requested to provide discovery may have little information about the importance of the discovery in resolving the issues as understood by the requesting party. . . . A party claiming undue burden or expense ordinarily has far better information—perhaps the only information—with respect to that part of the determination. A party claiming that a request is important to resolve the issues should be able to explain the ways in which the underlying information bears on the issues as that party understands them. The court's responsibility, using all the information provided by the parties, is to consider these and all the other factors in reaching a case-specific determination of the appropriate scope of discovery.

Rule 26 Advisory Committee Notes; *see also Haukereid v. Nat'l R.R. Passenger Corp.*, 816 F.3d 527, 534 (8th Cir. 2016) (affirming denial of discovery requests under the proportionality standard); *United States ex rel. Jacobs v. CDS, P.A.*, No. 4:14-CV-00301-BLW, 2016 WL 4146077, at *2 (D. Idaho Aug. 3, 2016) (plaintiff-relator's qui tam allegations in false claims action cannot be used examine every request for government payment).

Under Rule 26(b)(1), a court must consider "whether the burden or expense of the proposed discovery outweighs its likely benefit." F.R.C.P. 26(b)(1); *Design Basics, LLC v. Ahmann Design, Inc.*, No. C16-0015, 2016 WL 4251076, at *4 (N.D. Iowa Aug. 10, 2016) (plaintiff's request for over 10,000 design plans was overly burdensome where limited relevancy

could not "justify production of hundreds of thousands of pages" of plans requiring manual retrieval and copying); *In re Fluoroquinolone Prod. Liab. Litig.*, No. MDL 15-2642 (JRT), 2016 WL 4045414, at *1 (D. Minn. July 20, 2016) (denying discovery requests as unduly burdensome). Courts have found requests overly burdensome where the request seeks production of large quantities of documents that do not relate to the facts directly at issue in the case. *See e.g., id.* (denying discovery requests that would impose significant burden on defendants with "less-than-certain benefits"); *Duhigg v. Indus.*, No. 8:15CV91, 2016 WL 4991480, at *3 (D. Neb. Sept. 16, 2016) (detailing burden on responding party in both time and legal costs that outweighed basic relevance).

Here, the limited scope of the remaining claim and tenuous relevance of the requested discovery does not justify requiring PPH, a 501(c)(3) non-profit, to spend over $650,000 to produce the requested discovery.

### A. Burden and Expense Required to Produce the Requested Patient Medical Records.

The burden and expense involved in locating, reviewing, redacting and producing medical records for every Medicaid patient that received a prescription for contraception from 2006 to 2008 is astronomical. As set forth below, it would cost PPH, at minimum, $590,000 to $740,000 to fulfill this request.

Locating Patient Medical Records. From 2006 to 2008, PPH estimates that it prescribed OCPs or contraceptive patches to approximately 15,000 to 20,000 Medicaid patients annually, totaling 45,000 to 60,000 Medicaid-reimbursed prescriptions during the relevant time period. (Decl. of Jennifer Warren-Ulrick (attached as Exhibit B) at ¶ 9.) From 2006 to 2008, PPH did not maintain patient records electronically so there is no means to search electronically for full patient health records. (*Id.* at ¶¶ 5, 10.) Instead, it will require a manual search to locate each patient chart. (*Id.* at ¶¶ 10-12.)

For all 50,000 estimated patients, the full patient charts are maintained either in hard copy in off-site storage or were scanned to one of two digital records systems and are maintained on compact discs. (*Id*. at ¶ 11.) Approximately 50-60% of these files were scanned to one of two digital records systems and are maintained on disc; the others remain in hard copy boxes in a warehouse. (*Id.* at ¶¶ 11-12.) It would take approximately 10 minutes to locate each specific patient record from the archive that was scanned to disc and print or extract the documents contained in the patient's file. (*Id*. at ¶ 11.) In total, estimating that 25,000 patient charts were scanned to disc, it would take approximately 4,000 hours to locate this information (.16 hours x (50% x 50,000 patients) = 4,000 hours). (*Id*.)

The remaining 40-50% of full patient charts are maintained off-site only in hard copy. (*Id.* at ¶ 12.) The hard copy off-site patient files are not maintained in a particular order (e.g. alphabetically or chronologically) making it very time-intensive to locate each file. (*Id.*) PPH estimates that it would take anywhere between 1 to 120 hours to locate a specific patient record from the hard-copy boxes. (*Id.*) The broad range in the time estimate is attributable to the fact that these records are not organized so there will be a rather large amount of luck in how quickly someone can find a particular patient file.

Accordingly, to gather the patient files that have been scanned to disc, it would take approximately 4,000 hours to review three years of patient records (.16 hours x (50% x 50,000 patients) = 4,000 hours). (*Id.* at ¶ 11.) For the files maintained in hard copy, even assuming it took *only one hour* to locate each patient file, it will take a minimum of 25,000 hours to review three years of patient records (1 hour x (50% x 50,000 patients) = 25,000 hours). (*Id.* at ¶ 12.) In total, this is 29,000 hours. If PPH hired workers to search for these files and paid the workers $10.00 per hour, it would cost PPH approximately $290,000.00 to locate and gather electronic abstracts, files scanned to disc, and hard copy files.

Review and Redaction of Patient Files. After PPH locates each patient file, PPH would need to review the file and redact confidential privileged communications. Iowa has a legislatively-created physician-patient privilege protecting against the disclosure of physician-patient privileged information. Iowa Code Ann. § 622.10; *see also Harder v. Anderson, Arnold, Dickey, Jensen, Gullickson & Sanger, L.L.P.*, 764 N.W.2d 534, 537 (Iowa 2009); *State v. Heemstra*, 721 N.W.2d 549, 560 (Iowa 2006) ("[T]he privilege would be virtually meaningless if it prohibited testimony but did not protect the very records upon which such testimony would be based."). A patient has a right to privacy in her medical records, which only a "compelling need for information" can override. *Heemstra*, 721 N.W.2d at 560-61; *see also Holland v. Muscatine Gen. Hosp.*, 971 F. Supp. 385, 389 (S.D. Iowa 1997) (whether a privilege applies to confidential records requires a process of "balancing the public's need for the full development of relevant facts in federal litigation against the countervailing demand for confidentiality in order to achieve the objectives underlying the privilege"). The purpose of the broad privilege is to "promote free and full communication between a patient and . . . doctor so that the doctor will have the information necessary to competently diagnose and treat the patient," and should be construed "liberally to carry out its manifest purpose." *Heemstra*, 721 N.W.2d at 563.

Here, to the extent the Medicaid patient's health records reflect privileged physician-patient communications, those portions of the file would need to be redacted prior to any production of the file. It would take approximately fifteen minutes to an hour to review and redact each file. Determinations of privilege may need to be made by an attorney. Accordingly, if an average file takes even 15 minutes to review for privilege (many may take much longer), it likely will take a minimum of 5,000 attorney hours to review one year of patient records (0.25 hours x 15,000 patient files = 3,750 hours). If PPH hired contract attorneys to review and redact patient files and paid each attorney $40.00 per hour, it would cost PPH approximately $150,000.00 to review and redact patient files for one year. As there would be some Medicaid

patients who received birth control prescriptions in multiple years between 2006 through 2008, in total, to review and redact all of the patient files for Medicaid patients that received a birth control prescription from 2006 to 2008, PPH estimates that it would cost at least $300,000 to $450,000. In addition, there would be further expenses associated with bates-labeling and copying the documents for production.

In total, as set forth above, PPH estimates that it would cost, at minimum, $590,000 to $740,000 to locate, review, redact and produce the medical files for Medicaid patients that received a prescription for contraception from PPH in 2006 to 2008. As a non-profit 501(c)(3) organization, PPH does not have the financial ability to pay for such a project. Moreover, balanced against the tenuous relevancy of the information to the narrow remaining claim in this litigation, a proportionality analysis weighing the burden and expense of the discovery mandates Plaintiff's motion to compel be denied.[6]

> **B.    Burden and Expense Required to Produce Prescription Information in the FamPlan Database.**

Plaintiff has also moved to compel PPH to produce the FamPlan database pages containing the "Rx" and "Problem Supply Sheets" for each birth control prescription paid by Medicaid from 2006 to 2008. During that time period, PPH used FamPlan, a structured database, to input basic patient information and billing records. (Exhibit B, Warren-Ulrick

---

[6] To the extent the Court has any hesitation in denying the motion to compel outright, PPH respectfully submits that these discovery requests be denied until the Court has had an opportunity to decide a summary judgment motion as to whether PPH's prescribing practices in 2006 to 2008 constituted a fraudulent violation of Medicaid. *In re Fluoroquinolone Prod. Liab. Litig.*, No. MDL 15-2642 (JRT), 2016 WL 4045414, at *1 (D. Minn. July 20, 2016) (denying discovery request as overly burdensome, but noting that a District Court can consider the sequencing of discovery in the case to delay (and potentially obviate the need for) the alleged burdensome discovery); *Johnston v. Dooley*, No. 4:15-CV-04125, 2016 WL 4203430, at *2 (D.S.D. Aug. 9, 2016) (District Courts are given broad discretion under Rule 26 to limit the time, place and manner of discovery as well as its timing and sequence of discovery).

Affidavit at ¶¶ 4, 21.)  PPH discontinued its use of FamPlan by early 2010.  (*Id.* at ¶ 21.)  PPH employees no longer have access to an active FamPlan database system so access to the system would need to be restored by a PPH information technology ("IT") staff member.  (*Id.* at ¶ 22.)  The database pages that Thayer requests ("Rx" or "Problem Supply Sheets") were added to the standard version of the FamPlan database as an additional module at PPH's request.  (*Id.* at ¶ 23.)

Once PPH has restored access to the database, PPH would need to pull up the requested page for each individual prescription one-by-one and print or capture a screenshot of the information contained on the "Rx" or "Problem Supply Sheet" page.  (*Id.* at ¶ 24.)  On average, it will take at least 10 minutes to search and capture the screen shots for each prescription.  (*Id.* at ¶ 24.)  Accordingly, it likely will take a minimum of 8,000 hours to locate and retrieve the "Rx" or "Problem Supply Sheets" for three years of Medicaid-reimbursed birth control prescriptions (0.16 hours x 50,000 patients = 8,000 hours).  If PPH hired workers to retrieve this information and paid each worker $10.00 per hour, it would cost PPH at least $80,000.00 to locate and retrieve the requested information for the three years of 2006 to 2008.  In addition, there would be further expenses associated with bates-labeling and copying the documents for production.

As with the patient medical records, this information has limited, if any, relevancy to the remaining claims at issue.  A proportionality analysis weighing the burden and expense of the discovery mandates Plaintiff's motion to compel be denied.

WHEREFORE, Defendant Planned Parenthood of the Heartland, Inc. respectfully requests that this Court enter an order denying Plaintiff's motion to compel.

Dated: January 20, 2017                                       Respectfully submitted,

/s/  Tiffany L. Amlot
Alan S. Gilbert, *pro hac vice*
Tiffany L. Amlot, *pro hac vice*
Kristen C. Rodriguez, *pro hac vice*
Dentons US LLP

-16-

>233 S. Wacker Drive, Suite 5900
>Chicago, IL 60606
>Telephone: 312-876-8000
>Facsimile: 312-876-7934
>alan.gilbert@dentons.com
>tiffany.amlot@dentons.com
>kristen.rodriguez@dentons.com
>
>Stanley J. Thompson
>Jonathan C. Wilson
>Davis Brown Koehn Shors & Roberts PC
>215 10th Street, Suite 1300
>Des Moines, IA 50309
>Telephone: 515 288 2500
>Facsimile: 243 0654
>StanThompson@davisbrownlaw.com
>jonathanwilson@davisbrownlaw.com

## CERTIFICATE OF SERVICE

I, Tiffany L. Amlot, an attorney, hereby certify that on January 20, 2017, I electronically filed **DEFENDANT'S RESISTENCE TO PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ Tiffany L. Amlot

102376629