# Exhibit B

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA, CENTRAL DIVISION

| | |
|---|---|
| SUSAN THAYER,<br>Qui Tam Plaintiff/Relator<br><br>ON BEHALF OF HERSELF AND ON BEHALF OF THE UNITED STATES OF AMERICA AND THE STATE OF IOWA,<br>    Plaintiff,<br><br>v.<br><br>PLANNED PARENTHOOD OF THE HEARTLAND, INC. (f/k/a PLANNED PARENTHOOD OF GREATER IOWA, INC.),<br>    Defendant. | Case No. 4:11-cv-00129<br><br>**DECLARATION OF JENNIFER WARREN-ULRICK** |

I, Jennifer Warren-Ulrick, declare:

   1.   I am the current Director of Health Services, Business Operations for Planned Parenthood of the Heartland, Inc. ("PPH"). As part of my job duties, I have been involved in overseeing clinic management, overseeing health centers and regional directors and leading projects to implement and change PPH's electronic data management systems. I am also familiar with the current litigation between PPH and Susan Thayer ("Thayer").

   2.   I am authorized by PPH to make this Declaration in resistance to the Motion to Compel filed by Thayer. I have personal knowledge of or have conducted a diligent investigation with respect to the matters set forth in this Declaration and, if called as a witness in this action, can and would testify competently thereto.

   3.   I have been employed by PPH, formerly Planned Parenthood of Greater Iowa, Inc. ("PPGI"), for approximately 23 years. During the time period at issue in this case, January 1, 2006 through December 31, 2008, my role at PPH was Regional Director, Health Services. In both my capacity as a former Regional Director, and my current role, I have personal knowledge

of the operations, patient record-keeping practices, and supervision of management staff at PPH's health centers, as well as the implementation and basic functioning of PPH's structured database systems.

Background on Planned Parenthood Operations

4. From January 1, 2006 to December 31, 2008, PPH or PPGI operated 14 clinic locations.

5. During that time period, PPH did not maintain patient health records electronically. PPH began maintaining electronic health records in late 2009.

6. Between 2006 and 2008, PPH did maintain a structured database called FamPlan 2000 ("FamPlan") to input basic patient information and billing records. FamPlan was a patient management system that includes demographic, insurance, billing information, and services provided. PPH discontinued its use of FamPlan in late 2009 or early 2010. PPH only maintains the data from FamPlan in archived, not active, form.

Patient Medical Records and Charts

7. It is my understanding that Plaintiff has requested PPH to produce all patient medical records and charts for any patient who was provided or was written a prescription for oral contraceptive pills ("OCPs") or contraceptive patches that were paid for in part or in full by Medicaid for the time period of January 1, 2006 through December 31, 2008. As detailed below, I estimate that it would take PPH approximately 29,000 hours to locate the requested information.

8. First, PPH would need to identify every patient that received contraception from PPH from 2006-2008 that was paid by Medicaid. PPH would need to search its current electronic structured database of billing information to obtain that information.

9. It is my estimate, based on my personal knowledge of PPH health centers' general operations between 2006 and 2008, and PPH health centers' general operations at present, that the number of patients who were dispensed or written a prescription for OCPs or contraceptive patches that were paid for in part or in full by Medicaid in 2006 to 2008 is between 15,000-20,000 patients per year, totaling 45,000-60,000 Medicaid-reimbursed prescriptions during the relevant time period. For the purposes of the in this Declaration, I am using 50,000 patients as my best estimation.

10. Second, PPH would need to locate the patient chart for every patient that received an OCP or contraceptive patch from 2006 to 2008. Because PPH did not maintain patient records as electronic health records during that time, all patient records from that time period are, or were at one time, kept in hard copy. The FamPlan database archive can be searched for records, but to access the physical charts would require a manual search.

11. For all 50,000 estimated patients, the full patient charts are maintained either in hard copy in off-site storage or were scanned to one of two digital records systems and are maintained on compact discs. To the best of my knowledge, between 50-60% of these files were scanned to a disc. To the best of my knowledge and estimation, it would take approximately 10 minutes to locate each specific patient record from the archive that was scanned to disc and print or extract the documents contained in the patient's file. In total, estimating that 25,000 patient charts were scanned to disc, it would take approximately 4,000 hours to locate this information (.16 hours x (50% x 50,000 patients) = 4,000 hours).

12. The remaining 40-50% of full patient charts are maintained off-site only in hard copy. To the best of my knowledge, the hard-copy files are not maintained in a particular order (e.g. alphabetically or chronologically). As such, to the best of my knowledge, the files would need to be manually searched to locate a particular patient, which could take between 1-120

hours to locate a specific patient record from the hundreds of boxes of hard copy files. In total estimating that 25,0000 patient charts are maintained in hard copy, and assuming the most efficient search for one patient, to search for approximately 25,000 patients would take approximately 25,000 hours (1 hours x (50% x 50,000 patients) = 25,000 hours).

13.    In total, in order to locate the patient files requested by Plaintiff in RFP 6, it would take at least 29,000 hours.

14.    It is my understanding that Thayer has also asked PPH to produce medication or problem sheets contained in the patient medical records files. To the best of my knowledge, those forms would be contained in the patient medical file as described above.

"Rx" and "Problem Supply Sheets" Contained in FamPlan Database

15.    It is my understanding that Plaintiff has requested PPH to produce the FamPlan database page containing the "Rx" and "Problem Supply Sheets" for any patients who were prescribed OCPs from 2006 to 2008 and all hard-copy or electronic documents relating in any way to the Rx or Problem Supply Sheets.

16.    During that time period, PPH used the FamPlan database, but PPH discontinued its use of FamPlan in late 2009 or early 2010.

17.    PPH employees, including myself, no longer have access to an active FamPlan database system, which would need to be restored by a PPH information technology ("IT") staff member. An IT staff member would need to provide the PPH employee responsible for running a billing report with new log-in information for the FamPlan system.

18.    To my knowledge, the database pages that Thayer requests were added to the standard version of the FamPlan database as an additional module at PPH's request.

19.    Once PPH is able to access the FamPlan database, PPH would need to pull up the requested page for each individual patient one-by-one and print or capture a screenshot of the

information contained on the page, which would take approximately 10 minutes per patient. Based on my knowledge and estimation of the amount of PPH patients who received OCP prescriptions during the time period in question -- approximately 50,000 patients -- it would take approximately 8,000 hours to gather the Rx and Problem Supply Sheet pages requested (0.16 hours x 50,000 patients = 8,000 hours).

## CERTIFICATION

I, Jennifer Warren-Ulrick, declare under penalty of perjury under 28 U.S.C. § 1746 that the foregoing is true and correct to the best of knowledge.

EXECUTED: January 20, 2017        SIGNATURE: _/s/ JWUlrick_